Robert C. Schubert (S.B.N. 62684)
(rschubert@sjk.law)
Amber L. Schubert (S.B.N. 278696)
(aschubert@sjk.law)
Sonum Dixit (S.B.N. 353395)
(sdixit@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:     (415) 788-4220
Facsimile:     (415) 788-0161

*Counsel for Plaintiff Richard Ealy*
*and the Putative Class*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| RICHARD EALY, Individually and on Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>      v.<br><br>SALESFORCE, INC. and TRANSUNION, LLC,<br><br>           Defendants. | Case No. 3:25-cv-07970<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Class Action Complaint

Upon personal knowledge as to his own acts, and based upon his investigation, the investigation of counsel, and information and belief as to all other matters, Plaintiff Richard Ealy, on behalf of himself and all others similarly situated, alleges as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this class action against Defendants Salesforce, Inc. ("Salesforce") and TransUnion, LLC ("TransUnion") (together, "Defendants") for their failure to adequately secure and safeguard Plaintiff's and millions of other individuals' personally identifying information ("PII") including names, Social Security Numbers, and dates of birth.

2.      Defendant Salesforce is a cloud-based software company providing its services to various corporate clients throughout the country in sales, marketing automation, e-commerce, analytics, artificial intelligence, and application development.

3.      Defendant TransUnion is one of three American consumer credit reporting agencies.

4.      On August 26, 2025, Defendant TransUnion, one of Salesforce's clients, notified Plaintiff and other affected individuals about a "recent[]" Data Breach "involving a third party application serving our U.S. consumer support operations."[1] On information and belief, this database is operated by Salesforce, whose software was repeatedly targeted through compromised customer OAuth tokens, and/or phishing attempts utilizing fake Salesforce apps to obtain victims' login details.[2]

5.      This is a "hub-and-spoke" data breach case. The "hub" in this case is Salesforce, which is a company that specializes in cloud-storage technologies to warehouse and secure sensitive data, as well as other software products. Salesforce sells its products to numerous companies, or

---

[1] *See* Exhibit A.

[2] Bill Toulas, *TransUnion suffers data breach involving over 4.4 million people*, THE BLEEPING COMPUTER (Aug. 28, 2025), https://www.bleepingcomputer.com/news/security/transunion-suffers-data-breach-impacting-over-44-million-people/ (last accessed Sept. 3, 2025); Kurt Knutsson, *TransUnion becomes latest victim in major wave of Salesforce-linked cyberattacks, 4.4M Americans affected*, FOX NEWS (Aug. 31, 2025), https://www.foxnews.com/tech/transunion-becomes-latest-victim-major-wave-salesforce-linked-cyberattacks-4-4m-americans-affected (last accessed Sept. 3, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

"spokes," who store information on Salesforce's cloud-based software. These spokes include TransUnion.

6.    The Data Breach affected 4,461,511 customers.[3]

7.    On information and belief, the Data Breach affects over 700 organizations,[4] and therefore the number of affected individuals across all of Salesforce's clients is much larger than one million.

8.    The Data Breach was directly and proximately caused by Defendants' failure to implement reasonable and industry-standard data security practices necessary to protect their systems from a foreseeable and preventable cyberattack. Through this wrongful conduct, the sensitive PII of millions of individuals is now in the hands of cybercriminals, who target this sensitive data for its value to identity thieves. Plaintiff and Class Members are now at a significantly increased and impending risk of fraud, identity theft, and similar forms of criminal mischief—risks which may last the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes. Moreover, Plaintiff and Class Members have lost the inherent value of their private data.

9.    By aggregating information obtained from the Data Breach with other sources or other methods, criminals can assemble a full dossier of private information on an individual to facilitate a wide variety of frauds, thefts, and scams. Criminals can and do use victims' names and other personal information to open new financial accounts, incur credit charges, obtain government benefits and identifications, fabricate identities, and file fraudulent tax returns well before the person whose PII was stolen becomes aware of it. Any one of these instances of identity theft can have devastating consequences for the victim, causing years of often irreversible damage to their credit scores, financial stability, and personal security.

---

[3] Data Breach Notifications, OFFICE OF THE MAINE ATTORNEY GENERAL (Aug. 26, 2025), https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3-4685-bffd-f728ce96e2fd.html (last accessed Sept. 3, 2025).

[4] David Jones, *Hackers steal data from Salesforce instances in widespread campaign*, CYBERSECURITY DIVE (Aug. 26, 2025), https://www.cybersecuritydive.com/news/hackers-steal-data-salesforce-instances/758676/ (last accessed Sept. 1, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

10.     Defendant TransUnion fails to disclose in its Data Breach notice when the Data Breach occurred.[5]

11.     Despite knowing that the Data Breach occurred, and many of its other spokes have faced data breaches involving Salesforce's cloud-based services, Defendant Salesforce has not publicly disclosed any information regarding its role in these data breaches, exacerbating the damages and risks to Class Members, and in violation of various state data breach notification statutes. Neither Defendant has informed Plaintiff and Class Members how many people were impacted, how the "cyber criminals" accessed Defendants' systems and the root cause of the Data Breach, whether the exfiltrated information was encrypted or anonymized, why it took so long to notify victims, or what specific remedial steps Defendants have taken to safeguard PII within their systems and networks (or otherwise purge unnecessary information) and to prevent further cyberattacks going forward. Without these critical details, Plaintiff and Class Members cannot meaningfully mitigate the resulting effects of the Data Breach.

12.     Defendant Salesforce represents in its Data Processing Addendum that it signs with its clients, including TransUnion, that it "shall maintain appropriate technical and organizational measures for protection of the security (including protection against unauthorized or unlawful Processing and against accidental or unlawful destruction, loss or alteration or damage, **unauthorized disclosure of, or access to, Customer Data)**, confidentiality and integrity of Customer Data, as set forth in the Security, Privacy and Architecture Documentation."[6]

13.     Plaintiff is a Data Breach victim and received notification of the Data Breach from Defendant TransUnion on or around August 26, 2025.

14.     As a result of Defendants' conduct and the resulting Data Breach, Plaintiff's and Class Members' privacy has been invaded, their PII is now in the hands of criminals, they have either suffered or will suffer fraud or identity theft or face an imminent and ongoing risk of identity theft

---

[5] *See* Exhibit A.

[6] *Data Processing Addendum*, SALESFORCE, https://www.salesforce.com/en-us/wp-content/uploads/sites/4/documents/legal/Agreements/data-processing-addendum.pdf (last accessed Aug. 31, 2025) (emphasis added).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

15.    Plaintiff, on behalf of himself and all others similarly situated, herein alleges claims for negligence, breach of implied contract, invasion of privacy under Article I, Section 1 of the California Constitution, and violation of the California Customer Records Act, California Consumer Privacy Act of 2018, and California's Unfair Competition Law. Plaintiff on behalf of himself and the Class, seeks: (i) actual damages, economic damages, statutory damages, and nominal damages; (ii) punitive damages; (iii) fees and costs of litigation; (iv) injunctive relief, including the adoption of reasonably sufficient practices to safeguard PII in Defendants' custody, care, and control in order to prevent incidents like the Data Breach from recurring in the future and for Defendants to provide long-term identity theft protective services to Plaintiff and Class Members; and (v) such other relief as the Court deems just and proper.

## PARTIES

### A.    Plaintiff

16.    Plaintiff Richard Ealy is a resident and citizen of California.

### B.    Defendants

17.    Defendant Salesforce, Inc., is a Delaware corporation with its principal place of business located in 415 Mission Street, 3rd Floor, San Francisco, California 94105.

18.    Defendant TransUnion, LLC a limited liability company organized under the laws of Delaware, with its principal place of business located at 555 West Adams, Chicago, Illinois 60661.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one member of the putative Class, as defined below, is a citizen of a state other than that of Defendants, there are more than 100 putative Class Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

20.    This Court has general personal jurisdiction over Defendant Salesforce because it maintains its principal place of business in San Francisco, California, and regularly conducts

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

business in California, and has sufficient minimum contacts in California, such as to not offend traditional notions of fair play and substantial justice.

21.     Venue in this District is proper under 28 U.S.C. § 1391 because Salesforce resides in this District and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, including Defendant Salesforce collecting or storing the PII of Plaintiff and the putative Class Members.

22.     Divisional Assignment: This action arises in San Francisco County, in that a substantial part of the events which give rise to the claims asserted herein occurred in San Francisco County, where Salesforce is headquartered and located. Pursuant to L.R. 3-2(d), all civil actions that arise in San Francisco County shall be assigned to the San Francisco or Oakland Division.

## **FACTUAL BACKGROUND**

### A.     **Defendants Collect, Store, and Maintain Personally Identifiable Information**

23.     TransUnion is one of three consumer credit reporting agencies.

24.     TransUnion represents itself as a trustworthy organization. "As consumers and organizations increasingly transact with those they don't know, a reliable basis for trust has never been in greater demand — and in such short supply. That's where TransUnion comes in."[7]

25.     TransUnion further claims that it "has been in the business of enabling trust for over 50 years as a credit reporting agency."[8]

26.     TransUnion collects the following types of personal information: "Name (first, last, and/or maiden name) (or that of a family member or child); home address, billing address, or other physical address; email address(es); telephone number(s)[,] Device identification information used to access our websites; we may associate this device with a mobile telephone number[,] Information collected passively via cookies and similar technology[,] IP addresses, device identifiers, and application identifiers[, and] Categories of Sensitive Personal Information: Social Security number

---

[7] About Us, TRANSUNION, https://www.transunion.com/about-us (last accessed Sept. 3, 2025).

[8] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

or certain other information, such as date of birth, employment information, and credit card account information."[9]

27.    TransUnion's Privacy Notice claims that "[w]e maintain a comprehensive information security program with administrative (policies, standards, and processes), physical, and technical controls designed to protect the confidentiality, integrity, and accessibility of personal information."[10]

28.    TransUnion further claims that it "retain[s] personal information for as long as necessary to fulfill the purposes for which it was collected or processed, as previously described in this Notice, and consistent with applicable laws."[11]

29.    TransUnion's annual revenue in fiscal year 2024 was $4.184 billion.[12]

30.    Salesforce is a cloud-based software company that provides its services to various corporate clients nationwide in sales, customer service, marketing automation, e-commerce, analytics, artificial intelligence, and application development. Its annual revenue in fiscal year 2025 was $37.9 billion.[13]

31.    In providing its software services to businesses, Salesforce routinely collects sensitive Personal Information of its clients' customers. It asserts on its website that "Trust is our #1 value. We build trust with stakeholders by leading with ethics and through the integrity of our technology. We are dedicated to transparency, deep listening, and delivering on our commitments."[14]

32.    Salesforce also represents to its current and prospective customers that it "has security built into every layer of the Platform. The infrastructure layer comes with replication, backup, and

---

[9] TransUnion LLC Privacy Notice, *available at* https://www.transunion.com/privacy/transunion (last accessed Sept. 3, 2025).

[10] *Id.*

[11] *Id.*

[12] TransUnion Announces Fourth Quarter and Full-Year 2024 Results and Refreshed Capital Allocation Framework, *available at* https://newsroom.transunion.com/transunion-announces-fourth-quarter-and-full-year-2024-results-and-refreshed-capital-allocation-framework/ (last accessed Sept. 3, 2025).

[13] https://bullfincher.io/companies/salesforce/revenue (last accessed Sept. 1, 2025).

[14] https://www.salesforce.com/company/our-values/ (last accessed Sept. 1, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

disaster recovery planning. Network services have encryption in transit and advanced threat detection. Our application services implement identity, authentication, and user permissions."[15]

33.    Salesforce is aware of the sensitive nature of the Personal Information it collects, and it acknowledges the importance of data privacy.

34.    Defendant Salesforce represents in its Data Processing Addendum that it signs with its clients, including TransUnion, that it "shall maintain appropriate technical and organizational measures for protection of the security (including protection against unauthorized or unlawful Processing and against accidental or unlawful destruction, loss or alteration or damage, **unauthorized disclosure of, or access to, Customer Data)**, confidentiality and integrity of Customer Data, as set forth in the Security, Privacy and Architecture Documentation."[16]

35.    Salesforce also represents to current and former customers: "As the #1 CRM platform, Salesforce provides companies like yours with the tools to build trust while enhancing customer experiences. Gain increased transparency and control of your customers' data, all while harnessing the power of that data to connect with customers in new ways."[17]

36.    Salesforce's public-facing statements on privacy and security make it clear that it is aware of the need to safeguard the sensitive Personal Information entrusted to it by clients and consumers as part of providing its software services.

37.    Despite these strong proclaimed proactive policies and approaches to data security and privacy for their customers, Defendants failed to adequately secure and safeguard their systems and networks from a foreseeable and preventable cyberattack. This conduct proximately resulted in the Data Breach and significant harm to Plaintiff and the Class.

**B.    The Data Breach Exposed Valuable PII**

38.    On August 26, 2025, Defendant TransUnion notified affected individuals that "[w]e recently experienced a cyber incident involving a third-party application serving our U.S consumer

---

[15] https://www.salesforce.com/privacy/products/ (last accessed Sept. 1, 2025).

[16] *Data Processing Addendum*, SALESFORCE, https://www.salesforce.com/en-us/wp-content/uploads/sites/4/documents/legal/Agreements/data-processing-addendum.pdf (last accessed Aug. 31, 2025) (emphasis added).

[17] https://www.salesforce.com/privacy/products/

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1    support operations."[18]

2    39.    On information and belief, the "third-party" referenced by TransUnion as the source

3    of the Data Breach is Salesforce, which has affected numerous other "spoke" businesses who use

4    Salesforce's software and services.

5    40.    Despite Defendants' duties and commitments to safeguard sensitive and private

6    information, Defendants failed to follow industry-standard practices in securing Plaintiff's and the

7    Class Members' PII, as evidenced by the Data Breach.

8    41.    This is a "hub-and-spoke" data breach case. The "hub" in this case is Salesforce,

9    which sells its software services to numerous companies, or "spokes," who store information using

10   Salesforce's cloud-based software. These spokes include TransUnion and numerous other entities.

11   42.    Google Threat Intelligence Group issued an advisory statement on August 28, 2025

12   to "alert organizations about a widespread data theft campaign, carried out by the actor tracked as

13   UNC6395."[19] UNC6395 "targeted Salesforce customer instances through compromised OAuth

14   tokens associated with the Salesloft Drift third-party application."[20]

15   43.    UNC6395 "systematically exported large volumes of data from numerous corporate

16   Salesforce instances" with the "primary intent" of "harvest[ing] credentials." [21]

17   44.    Furthermore "[a]fter the data was exfiltrated, the actor searched through the data to

18   look for secrets that could be potentially used to compromise victim environments."[22]

19   45.    Defendant Salesforce has not formally notified Class Members about the Data

20   Breach.

---

[18] *See* Exhibit A.

[19] Austin Larsen, Matt Lin, Tyler McLellan, Omar ElAhdan, *Widespread Data Theft Targets Salesforce Instances via Salesloft Drift*, GOOGLE THREAT INTELLIGENCE GROUP (Aug. 26, 2025), https://cloud.google.com/blog/topics/threat-intelligence/data-theft-salesforce-instances-via-salesloft-drift, (last accessed Sept. 1, 2025).

[20] *Id.*

[21] *Id.*

[22] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**C.**    **Defendants Had Ample Notice That They Were Likely Cyberattack Targets**

46.    At all relevant times, Defendants knew, or should have known, that the PII they were entrusted with was a target for malicious actors. Defendants knew this given the unique type and the significant volume of data on their networks, servers, and systems, comprising individuals' detailed and confidential personal information and, thus, the significant number of individuals who the exposure of the PII would harm.

47.    As custodians of Plaintiff's and Class Members' PII, Defendants knew or should have known the importance of protecting their PII, and of the foreseeable consequences and harms to such persons if any data breach occurred.

48.    According to the Consumer Financial Protection Bureau, the number of data breach and identity theft complaints it received grew from 14,319 in 2020 to 32,469 in 2022.[23] It is well known among companies that PII such as social security numbers and financial information is valuable and frequently targeted by criminals.

49.    The Federal Trade Commission has warned consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[24]

50.    In April 2020, ZDNet reported that "ransomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[25]

51.    Criminals can commit all types of fraud, including: obtaining a driver's license or official identification card in the victim's name but the thief's picture, using the victim's name and

---

[23] *See Compromised: Why experts say data breaches are on the rise,* NBC 6 SOUTH FLORIDA, https://www.nbcmiami.com/responds/compromised-why-experts-say-data-breaches-are-on-the-rise/3473306/ (last accessed June 5, 2025).

[24] *See* What to Know About Identity Theft, FEDERAL TRADE COMMISSION (Sept. 2024), https://consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed June 5, 2025).

[25] Catalin Cimpanu, *Ransomware mentioned in 1,000+ SEC filings over the past year*, ZDNET (April 30, 2020), https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed Sept. 1, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SSN to obtain government benefits, to obtain lending or lines of credit, filing a fraudulent tax return using the victim's information. Identity thieves may obtain a job using the victim's social security number, rent a house, or give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[26]

52.    Defendants' security obligations were especially important due to the substantial increase of cyberattacks and data breaches in recent years.

53.    Defendants knew or should have known that as large corporations, they are prime targets of ransomware actors. Defendants also knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack.

**D.    Defendants Breached Their Duties to Plaintiff and Class Members, and Failed to Comply with Regulatory Requirements and Industry Practices.**

54.    Because Defendants were entrusted with PII at all times herein relevant, Defendants owed to Plaintiff and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in their care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to their networks and systems. Defendants also owed a duty to safeguard PII because they were on notice that they were handling highly valuable data and knew there was a significant risk they would be targeted by cybercriminals. Furthermore, Defendants knew of the extensive, foreseeable harm that would ensue for the victims of a data breach, and therefore also owed a duty to reasonably safeguard that information.

55.    Security standards commonly accepted among businesses like Defendants that store PII include, without limitation:

      i.    Maintaining a secure firewall configuration;

      ii.    Monitoring for suspicious or irregular traffic to servers or networks;

---

[26] *See* Warning Signs of Identity Theft, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed June 5, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

iii.     Monitoring for suspicious credentials used to access servers or networks;

iv.     Monitoring for suspicious or irregular activity by known users;

v.     Monitoring for suspicious or unknown users;

vi.     Monitoring for suspicious or irregular server requests;

vii.     Monitoring for server requests for PII;

viii.     Monitoring for server requests from VPNs; and

ix.     Monitoring for server requests for Tor exit nodes.

56.     The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[27] and protection of PII which includes basic security standards applicable to all types of businesses.[28]

57.     The FTC recommends that businesses:

i.     Identify all connections to the computers where sensitive information is stored.

ii.     Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

iii.     Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

iv.     Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

---

[27] Start with Security: A Guide for Business, FTC (June 2015), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[28] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

v.      Pay particular attention to the security of their web applications, the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

vi.      Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

vii.      Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access control settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

viii.      Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

ix.      Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

58.      As described further below, Defendants owed a duty to safeguard PII under the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act") to ensure that all information they received, maintained, and stored was secure. This statute was enacted to protect Plaintiff and the Class Members from the type of conduct in which Defendants engaged, and the resulting harms Defendants proximately caused Plaintiff and the Class Members.

59.      Under the FTC Act, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members.

60.      Defendants breached their duty to exercise reasonable care in protecting Plaintiff's and Class Members' PII by failing to implement and maintain adequate data security measures to

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

safeguard Plaintiff's and Class Members' sensitive personal information, failing to encrypt or anonymize PII within their systems and networks, failing to monitor their systems and networks to promptly identify and thwart suspicious activity, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiff's and Class Members' confidential and private information. Additionally, Defendants breached their duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, Defendants also violated their duties under the FTC Act.

61.    Defendants failed to prevent the Data Breach. Had Defendants properly maintained and adequately protected their systems, servers, and networks, the Data Breach would not have occurred.

62.    Additionally, the law imposes an affirmative duty on Defendants to timely disclose the unauthorized access and theft of PII to Plaintiff and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. Defendants further breached their duties by failing to provide any notice of the Data Breach to Plaintiff and Class Members. In so doing, Defendants actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiff and Class Members.

**E.    The Experiences of Plaintiff**

63.    On information and belief, Plaintiff Richard Ealy has been a customer of TransUnion for many years.

64.    Upon information and belief, Defendant Salesforce received Plaintiff's information from Defendant TransUnion.

65.    Plaintiff Ealy trusted that Defendants would use reasonable measures to protect his data according to state and federal law.

66.    Plaintiff Ealy received a data breach notification letter dated August 26, 2025, from TransUnion.  The letter informed him that his personal information had been compromised in the breach, including his Social Security number and data of birth.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

67.     Upon learning of the Data Breach, Plaintiff Ealy spent numerous hours researching the Data Breach.

68.     In addition, since the Data Breach, Plaintiff Ealy has experienced a noticeable increase in spam calls and emails, which he believes are connected to the exposure of his personal information.

69.     Plaintiff Ealy has taken precautions to protect his data, such as maintaining credit monitoring and identity theft protection.

70.     As a proximate result of the Data Breach, Plaintiff Ealy will spend time for the foreseeable future and beyond dealing with its consequences and self-monitoring his accounts and credit reports to monitor potentially suspicious and fraudulent activity. This time will be lost forever and cannot be recaptured.

71.     Plaintiff Ealy has and is experiencing anger, stress, and frustration because his sensitive information was stolen in the Data Breach, and not knowing by whom or for what purpose. This goes beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that the law contemplates and addresses.

72.     Plaintiff Ealy suffered actual injuries in the form of damages to and diminution in the value of his PII—a form of intangible property that was entrusted to Defendants—which was compromised in and as a proximate result of the Data Breach.

73.     Plaintiff Ealy has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse proximately resulting from his PII being obtained by unauthorized third parties and possibly cybercriminals.

74.     Plaintiff Ealy has a continuing interest in ensuring that his PII, which remains within Defendants' possession and control, is protected and safeguarded against future data breaches or cybersecurity risks.

75.     Defendants deprived Plaintiff Ealy of the earliest opportunity to guard himself against the Data Breach's harmful effects by failing to promptly notify him about it. It is unknown how long TransUnion waited to notify Plaintiff Ealy, and Defendant Salesforce still has not publicly disclosed its involvement in this Data Breach, and recent data breaches of its other customers.

**F.** **Plaintiff and the Class Suffered Actual and Impending Injuries Resulting From the Data Breach**

76.     As a proximate result of Defendants' completely unreasonable security practices, identity thieves now possess the sensitive PII of Plaintiff and the Class. That information is extraordinarily valuable on the black market and incurs direct costs to Plaintiff and the Class. On the dark web—an underground Internet black market—criminals openly buy and sell stolen PII to create "identity kits" worth up to $2,000 each that can be used to create fake IDs, gain access to bank accounts, social media accounts, and credit cards, file false insurance claims or tax returns, or rack up other kinds of expenses.[29] And, "[t]he damage to affected [persons] may never be undone."[30]

77.     Unlike the simple credit-card breaches at retail merchants, these damages cannot be avoided by canceling and reissuing plastic cards or closing an account. Identity theft is far more pernicious than credit card fraud. Criminals' ability to open entirely new accounts—not simply prey on existing ones—poses far more dangerous problems. Identity thieves can retain the stolen information for years until the controversy has receded because victims may become less vigilant in monitoring their accounts as time passes. Then, at any moment, the thief can take control of a victim's identity, resulting in thousands of dollars in losses and lost productivity. The U.S. Department of Justice has reported that in 2021, identity theft victims spent on average about four hours to resolve problems stemming therefrom and that the average financial loss experienced by an identity theft victim was $1,160 per person.[31] Additionally, about 80% of identity theft victims reported some form of emotional distress resulting from the incident.[32]

78.     As a consequence of the Data Breach, Class Members' credit profiles can be destroyed before they even realize what happened, and they may be unable to legitimately borrow

---

[29] Nick Culbertson, *Increased Cyberattacks on Healthcare Institutions Shows the Need for Greater Cybersecurity* (Jun. 7, 2021), FORBES, https://www.forbes.com/sites/forbestechcouncil/2021/06/07/increased-cyberattacks-on-healthcare-institutions-shows-the-need-for-greater-cybersecurity/?sh=ca928c05650d.

[30] *Id.*

[31] Erika Harrell and Alexandra Thompson, Victims of Identity Theft, 2021, U.S. DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS (Oct. 2023), *available at* https://bjs.ojp.gov/document/vit21.pdf.

[32] *Id.*

---

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

money, obtain credit, or open bank accounts. Class Members can be deprived of legitimate tax refunds or, worse yet, may face state or federal tax investigations due to fraud committed by an identity thief. And even the simple preventive step of adding oneself to a credit-fraud watch list to guard against these consequences substantially impairs Class Members' ability to obtain additional credit. In fact, many experts advise victims to place a freeze on all credit accounts, making it impossible to rent a car, get student loans, buy or rent big-ticket items, or complete a major new car or home purchase.

## **CLASS ACTION ALLEGATIONS**

79. Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), and where applicable, 23(c)(4), Plaintiff seeks certification of the following Nationwide Class and California Subclass (collectively, the "Class"):

> **Nationwide Class:** All persons in the United States who were impacted by the Salesforce Data Breach, including all persons who were sent notice by TransUnion or any other client of Salesforce that their Personal Information was compromised as a result of the Data Breach (and each person a "Class Member").

> **California Subclass:** All persons in the State of California who were impacted by the Salesforce Data Breach, including all persons who were sent notice by TransUnion or any other client of Salesforce that their Personal Information was compromised as a result of the Data Breach (and each person a "Class Member").

80. Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

81. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and 23(b)(3), and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

82. *Numerosity Under Rule 23(a)(1)*. The Class is so numerous that the individual joinder of all members is impracticable, and the disposition of the claims of all members of the Class in a

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

single action will provide substantial benefits to the parties and the Court. Upon information and belief, Plaintiff estimates that the Class is comprised of millions of Class Members. The Class is sufficiently numerous to warrant certification.

83.    *Commonality Under Rule 23(a)(2)*. Common legal and factual questions exist that predominate over any questions affecting only individual members of the Class. These common questions, which do not vary among members of the Class and which may be determined without reference to any Class Member's individual circumstances, include, but are not limited to:

a.    Whether Defendants knew or should have known that their computer systems and networks were vulnerable to unauthorized third-party access or a cyberattack;

b.    Whether Defendants failed to utilize and maintain adequate and reasonable security and preventive measures to ensure that their computer systems and networks were protected;

c.    Whether Defendants failed to take available steps to prevent and stop the Data Breach from occurring;

d.    Whether Defendants failed to comply with their own policies and applicable laws, regulations and industry standards relating to data security;

e.    Whether Defendants owed a legal duty to Plaintiff and Class Members to protect their PII;

f.    Whether Defendants breached any duty to protect the PII of Plaintiff and Class Members by failing to exercise due care in protecting their sensitive and private information;

g.    Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the breach of their systems, resulting in the loss of the PII of Plaintiff and Class Members.

h.    Whether Defendants provided timely, accurate, and sufficient notice of the Data Breach to Plaintiff and the Class Members;

i.    Whether Plaintiff and Class Members have been damaged by the wrongs alleged and are entitled to actual, statutory, or other forms of damages and other monetary relief; and

j.    Whether Plaintiff and Class Members are entitled to injunctive or equitable relief, including restitution.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

84.    _Typicality Under Rule 23(a)(3)_. Plaintiff's claims are typical of the claims of the Class. Plaintiff had his PII compromised in the Data Breach. Defendants' uniformly unlawful course of conduct injured Plaintiff and Class Members.

85.    _Adequacy of Representation Under Rule 23(a)(4)_. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and consumer protection class action matters such as this action, and Plaintiff and his counsel intend to vigorously prosecute this action for the Class's benefit and have the resources to do so. Plaintiff and his counsel have no interests adverse to those of the other members of the Class.

86.    _Predominance and Superiority_. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Class Member's claim is impracticable. The damages, harm, and losses suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Even if each Class Member could afford individual litigation, the Court system could not. It would be unduly burdensome if tens of thousands of individual cases or more proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

87.    As a result of the foregoing, class treatment under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and (c)(4) is appropriate.

### FIRST CAUSE OF ACTION
#### Negligence
#### *(On Behalf of Plaintiff and the Nationwide Class)*

88.    Plaintiff incorporates the above allegations as if fully set forth herein.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

89.     Because Defendants were entrusted with such PII at all times herein relevant, they owed to Plaintiff and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in their care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to their networks and systems. This duty arose independently from any contract.

90.     Defendants knew, or should have known, of the risks inherent in collecting and storing massive amounts of PII, including the importance of adequate data security and the high frequency of ransomware attacks and well-publicized data breaches. Defendants owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendants' failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that sensitive information. Indeed, on their websites, Defendants commit to data privacy, including safeguarding PII.

91.     Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's PII by failing to limit access to this information to unauthorized third parties and by not properly supervising both the way the PII was stored, used, and exchanged, and those in their employ responsible for such tasks.

92.     Defendants owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendants also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and circumstances of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

93.     Defendants also had a common law duty to prevent foreseeable harm to others. Defendants had full knowledge of the sensitivity and high value of the PII that they stored and the types of foreseeable harm and injury-in-fact that Plaintiff and Class Members could and would suffer if that PII were wrongfully disclosed, leaked, accessed, or exfiltrated. Defendants' conduct created

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

a foreseeable and unreasonable risk of harm to Plaintiff and Class Members, who were the foreseeable victims of Defendants' inadequate data security practices.

94.    Defendants violated their duty to implement and maintain reasonable security procedures and practices, including through their failure to adequately restrict access to their systems that held millions of individuals' PII or encrypt or anonymize such data. Defendants' duty included, among other things, designing, maintaining, and testing their information security controls to ensure that PII in their possession was adequately secured by, for example, encrypting or anonymizing sensitive personal information, installing intrusion detection and deterrent systems and monitoring mechanisms, and using access controls to limit access to sensitive data.

95.    Defendants' duty of care also arose pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act"), under which Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members.

96.    The FTC Act was enacted to protect Plaintiff and the Class Members from the type of wrongful conduct in which Defendants engaged.

97.    Defendants' violation of the FTC Act constitutes negligence per se for purposes of establishing the duty and breach elements of Plaintiff's negligence claim. Those statutes were designed to protect a group to which Plaintiff belongs and to prevent the types of harm that resulted from the Data Breach.

98.    Defendants breached their duty to exercise reasonable care in protecting Plaintiff's and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiff's and Class Members' sensitive personal information, failing to encrypt or anonymize PII within their systems and networks, failing to monitor their systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII no longer necessary for its provision of services to their clients and customers, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiff's and Class Members' confidential and private information. Additionally, Defendants breached their duty by utilizing outdated and ineffectual data security measures which deviated from

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1    standard industry best practices at the time of the Data Breach. Through these actions, Defendants

2    also violated their duties under the FTC Act.

3        99.    The law imposes an affirmative duty on Defendants to timely disclose the

4    unauthorized access and theft of PII to Plaintiff and Class Members so that they can take appropriate

5    measures to mitigate damages, protect against adverse consequences, and thwart future misuses of

6    their private information. Defendants further breached its duties by failing to provide any notice of

7    the Data Breach to Plaintiff and Class Members. In so doing, Defendants actually and proximately

8    caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiff and Class

9    Members. Timely disclosure was necessary so that Plaintiff and Class Members could, among other

10   things: (i) purchase identity theft protection, monitoring, and recovery services; (ii) flag asset, credit,

11   and tax accounts for fraud; (iii) purchase or otherwise obtain credit reports; (iv) place or renew fraud

12   alerts on a quarterly basis; (v) closely monitor loan data and public records; and (vi) take other

13   meaningful steps to protect themselves and attempt to avoid or recover from identity theft and other

14   harms.

15       100.    In Fiscal Year 2025, Salesforce reported a revenue of $37.9 billion, and accordingly

16   had the financial and personnel resources necessary to prevent the Data Breach.

17       101.    In Fiscal Year 2024, TransUnion reported a revenue of $4.184 billion, and

18   accordingly had the financial and personnel resources necessary to prevent the Data Breach.

19       102.    Defendants nevertheless failed to adopt reasonable data security measures, in breach

20   of the duties they owed to Plaintiff and Class Members.

21       103.    Plaintiff and Class Members had no ability to protect their PII once it was in

22   Defendants' possession and control. Defendants were in an exclusive position to protect against the

23   harm suffered by Plaintiff and Class Members as a result of the Data Breach.

24       104.    But for Defendants' breach of duty to adequately protect Class Members' PII, Class

25   Members' PII would not have been stolen. As a result of Defendants' negligence, Plaintiff and Class

26   Members suffered and will continue to suffer the various types of damages alleged herein. There is

27   a temporal and close causal connection between Defendants' failure to implement adequate data

28   security measures, the Data Breach, and the harms suffered by Plaintiff and Class Members.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

105.    As a direct and traceable result of Defendants' negligence, Plaintiff and the Class have suffered or will suffer an increased and impending risk of fraud, identity theft, damages, embarrassment, humiliation, frustration, emotional distress, and lost time and out-of-pocket costs to mitigate and remediate the effects of the Data Breach. These harms to Plaintiff and the Class include, without limitation: (i) loss of the opportunity to control how their personal information is used; (ii) diminution in the value and use of their personal information entrusted to Defendants; (iii) the compromise and theft of their personal information; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and unauthorized use of financial accounts; (v) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including increased costs to use credit, credit scores, credit reports, and assets; (vi) unauthorized use of compromised personal information to open new financial and other accounts; (vii) continued risk to their personal information, which remains in Defendants' possession and is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the personal information in their possession; and (viii) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach.

106.    Defendants' negligence was gross, willful, wanton, and warrants the imposition of punitive damages given the clear foreseeability of a hacking incident, the extreme sensitivity of the private information under Defendants' care, and its failure to take adequate remedial steps, including prompt notification of the victims, following the Data Breach.

107.    Plaintiff and Class Members are entitled to all forms of monetary compensation set forth herein, including monetary payments to provide adequate long-term identity protection services. Plaintiff and Class Members are also entitled to the injunctive relief sought herein.

## SECOND CAUSE OF ACTION
### Breach of Implied Contract
### *(On Behalf of Plaintiff and the Nationwide Class)*

108.    Plaintiff incorporates the above allegations as if fully set forth herein.

109.    Defendant Salesforce entered into various contracts with its clients, such as TransUnion, to provide them cloud-based software services.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

110.    These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiff and the Class, as Defendant Salesforce agreed to safeguard and protect their confidential and private PII and to timely and accurately notify Plaintiff and Class Members if their information had been breached and compromised.

111.    Plaintiff and Class Members were required to provide their PII to Defendant TransUnion to obtain its credit reporting services.

112.    Defendants acquired, stored, and maintained the PII of Plaintiff and the Class.

113.    Plaintiff and Class Members were required to provide, or authorize the transfer of, their private information in order for Defendants to provide their services.

114.    Defendants solicited, offered, and invited Class Members to provide their private information as part of their regular business practices. Plaintiff and Class Members accepted Defendants' offer and provided their private information to Defendants.

115.    When Plaintiff and Class Members provided their PII to Defendants, they entered into implied contracts with Defendants and intended and understood that PII would be adequately safeguarded as part of these services.

116.    Defendants' implied promise of confidentiality to Plaintiff and Class Members include consideration beyond those pre-existing general duties owed under the FTC Act, or other state or federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

117.    Defendants' implied promises include but are not limited to: (a) taking steps to ensure that any agents who are granted access to PII also protect the confidentiality of that data; (b) restricting access to qualified and trained agents; (c) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (d) applying or requiring proper encryption; (e) multifactor authentication for access; (f) protecting Plaintiff's and Class Members' PII in compliance with federal and state laws and regulations and industry standards; and (g) other steps to protect against foreseeable data breaches.

118.    Defendants' implied promises to safeguard Plaintiff's and Class Members' PII are evidenced by representations on Defendants' websites. The mutual understanding and intent of

Plaintiff and Class Members on the one hand, and Defendants on the other, is further demonstrated by their conduct and course of dealing.

119.    Plaintiff and the Class Members would not have entrusted their PII to Defendants in the absence of such an implied contract. Had Defendants disclosed to Plaintiff and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and the other Class Members would not have provided their PII to Defendants.

120.    Defendants recognized that Plaintiff's and Class Members' PII is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

121.    Plaintiff and the Class Members fully and adequately performed their obligations under the implied contracts with Defendants.

122.    Defendant Salesforce breached the implied contracts it made with its clients by failing to take reasonable measures to safeguard their PII as described herein, as well as by failing to provide accurate, adequate, and timely notice to them that their PII was compromised as a result of the Data Breach.

123.    Defendant TransUnion breached the implied contracts it made with its customers by failing to take reasonable measures to safeguard their PII as described herein, as well as by failing to provide accurate, adequate, and timely notice to them that their PII was compromised as a result of the Data Breach.

124.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class Members suffered and will continue to suffer damages from: (i) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (ii) the loss of the confidentiality of the stolen PII, (iii) the illegal sale of the compromised data on the dark web, (iv) lost work time, and (v) other economic and non-economic harms.

125.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to strengthen their data security systems, submit to future audits of those systems, and provide adequate long-term credit monitoring and identity theft protection services to all persons affected by the Data Breach.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

### THIRD CAUSE OF ACTION
### Injunctive/Declaratory Relief
#### *(On Behalf of Plaintiff and the Nationwide Class)*

126.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described herein.

127.    Defendants owe a duty of care to Plaintiff and Class Members, which required Defendants to adequately monitor and safeguard Plaintiff's and Class Members' PII.

128.    Defendants and their officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns still possess the PII belonging to Plaintiff and Class Members.

129.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Defendants are currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Defendants' data security measures remain inadequate. Furthermore, Plaintiff and the Class continue to suffer injury as a result of the compromise of their PII and the risk remains that further compromises of their private information will occur in the future.

130.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

  a. Defendants owe a legal duty to adequately secure the PII of Plaintiff and the Class within its care, custody, and control under the common law, and Section 5 of FTC Act;

  b. Defendants breached their duty to Plaintiff and the Class by allowing the Data Breach to occur;

  c. Defendants' existing data monitoring measures do not comply with their obligations and duties of care to provide reasonable security procedures and practices that are

appropriate to protect the PII of Plaintiff and the Class within Defendants' custody, care, and control; and

    d.   Defendants' ongoing breaches of said duties continue to cause harm to Plaintiff and the Class.

131.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach or cybersecurity incident. This risk is real, immediate, and substantial. If another data breach or cybersecurity incident occurs, Plaintiff and the Class will not have an adequate remedy at law because monetary relief alone will not compensate Plaintiff and the Class for the serious risks of future harm.

132.    The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiff and the Class will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendants' compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

133.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach or cybersecurity incident, thus preventing future injury to Plaintiff and the Class and other persons whose PII would be further compromised.

**FOURTH CAUSE OF ACTION**
**Invasion of Privacy Under California's Constitution (Article 1, § 1)**
***(On Behalf of Plaintiff and the California Subclass)***

134.    Plaintiff, individually and on behalf of the California Subclass, incorporates by reference each of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

135.    Plaintiff and California Subclass Members have an interest in: (1) precluding the dissemination and/or misuse of their Private Information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion, or interference, including, but not

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

limited to, the right to visit and interact with various internet sites for the provision of credit reporting services without the risk of their data being exfiltrated.

136.     Plaintiff and California Subclass Members had a reasonable expectation that their communications, identity, and other data would remain confidential, and Defendants would keep their platforms secure.

137.     By failing to secure Plaintiff's and California Subclass Members' personal data, Defendants intentionally invaded Plaintiff's and California Subclass Members' right to privacy under the California Constitution.

138.     This invasion of privacy is serious in nature, scope, and impact because it relates to consumers' Private Information. Moreover, it constitutes an egregious breach of the societal norms underlying the right of privacy.

139.     As a result of Defendants' actions, Plaintiff and California Subclass Members have suffered harm and injury, including but not limited to invasion of their privacy rights.

140.     Plaintiff and California Subclass Members have been damaged as a direct and proximate result of Defendants' invasion of privacy and are entitled to just compensation, including monetary damages.

141.     Plaintiff and California Subclass Members seek appropriate relief for this injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests.

142.     Plaintiff and California Subclass Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendants' actions, directed at injuring Plaintiff and California Subclass Members in conscious disregard of their rights.

143.     Such damages are needed to deter Defendants from engaging in such conduct in the future.

144.     Plaintiff also seeks other such relief as the Court may deem just and proper.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

# FIFTH CAUSE OF ACTION
## Violation of the California Customer Records Act
## Cal. Civ. Code §§ 1798.80 *et seq.* ("CCRA")
### *(On Behalf of Plaintiff and the California Subclass)*

145.    Plaintiff, individually and on behalf of the California Subclass, incorporates by reference each of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

146.    "[T]o ensure that personal information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

147.    Defendants are businesses that own, maintain, or license personal information, within the meaning of Cal. Civ. Code § 1798.81.5, about Plaintiff and California Subclass Members.

148.    Defendants violated Cal. Civ. Code § 1798.81.5 by failing to implement reasonable measures to protect California Subclass Members' PII.

149.    Businesses that own or license computerized data that includes personal information are required to notify California residents when their PII has been acquired (or has reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of personal information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

150.    Defendants are businesses that own or license computerized data that includes personal information as defined by Cal. Civ. Code § 1798.82.

151.    Plaintiff's and California Subclass Members' PII includes personal information identified in Cal. Civ. Code § 1798.82(h) such as their names, birthdates and Social Security numbers, and is thereby covered by Cal. Civ. Code § 1798.82.

152.     Plaintiff and the California Subclass Members are "customers" within the meaning of Cal. Civ. Code § 1798.80(c), as their personal information was provided to Defendants in the process of receiving TransUnion's credit reporting services.

153.     The Data Breach constituted a breach of Defendants' security systems, networks, and servers.

154.     Because Defendants reasonably believed that Plaintiff and California Subclass Members' PII was acquired by unauthorized persons during the Data Breach, Defendants had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

155.     Defendants unreasonably delayed informing Plaintiff and the California Subclass Members about the breach of security of their PII after they knew the breach had occurred.

156.     Upon information and belief, no law enforcement agency instructed Defendants that notification to California Subclass Members would impede an investigation.

157.     Thus, by failing to disclose the Data Breach in a timely and accurate manner, Defendants also violated Cal. Civ. Code § 1798.82.

158.     Pursuant to Cal. Civ. Code § 1798.84, "[a]ny waiver of a provision of this title is contrary to public policy and is void and unenforceable," "[a]ny customer injured by a violation of this title may institute a civil action to recover damages," and "[a]ny business that violates, proposed to violate, or has violated this title may be enjoined."

159.     As a direct and proximate result of Defendants' violations of Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiff and California Subclass Members were (and continue to be) injured and suffered (and will continue to suffer) damages, as described above.

160.     Plaintiff and California Subclass Members seek relief under Cal. Civ. Code § 1798.84, including, but not limited to, actual damages, any applicable statutory damages, and equitable and injunctive relief.

## SIXTH CAUSE OF ACTION
### Violation of the California Consumer Privacy Act of 2018
### Civ. Code § 1798.100 *et seq.* ("CCPA")
### *(On Behalf of Plaintiff and the California Subclass)*

161.    Plaintiff, individually and on behalf of the California Subclass, incorporates the above allegations as if fully set forth herein.

162.    Section 1798.150(a)(1) of the CCPA provides, "[a]ny consumer whose nonencrypted or nonredacted personal information, as defined by [Civil Code section 1798.81.5(d)(1)(A)] . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

163.    Plaintiff is a consumer and California resident as defined by Civil Code section 1798.140(i).

164.    Defendants are businesses as defined by Civil Code section 1798.140(d)(2) because they are "organized or operated for the profit or financial benefit of [their] shareholders or other owners," and "collect[] consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determine[] the purposes and means of the processing of consumers' personal information, that do[] business in the state of California."

165.    Plaintiff's and California Subclass Members' personal information, as defined by Civil Code section 1798.140(v)(1), was subject to unauthorized access and exfiltration, theft, or disclosure. The Data Breach described herein exposed, without limitation, names, Social Security numbers, and birth dates.

166.    Defendants maintained Plaintiff's and California Subclass Members' PII in a form that allowed criminals to access it.

167.    The Data Breach occurred as a result of Defendants' failure to implement and maintain reasonable security procedures and practices for protecting the exposed information given its nature. Defendants failed to monitor their systems to identify suspicious activity and allowed unauthorized access to Plaintiff's and California Subclass Members' PII.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

168.     Consistent with Civil Code Section 1798.150(b), Plaintiff will provide written notice to Defendants identifying the CCPA provisions that Defendants violated.

169.     On behalf of California Subclass Members, Plaintiff presently seeks actual pecuniary damages and injunctive relief in the form of an order enjoining Defendants from continuing to violate the CCPA. Unless and until Defendants are restrained by order of the Court, its wrongful conduct will continue to cause irreparable injury to Plaintiff and the California Subclass.

170.     If Defendants fail to timely rectify or otherwise cure the CCPA violations described herein, individually and on behalf of the California Subclass, Plaintiff reserves his right to amend this Class Action Complaint to seek statutory damages and any other relief the Court deems proper as a result of Defendants' CCPA violations pursuant to Cal. Civ. Code § 1798.150(a).

**SEVENTH CAUSE OF ACTION**
**Violation of the Unfair Competition Law**
**Bus. & Prof. Code § 17200 et seq. ("UCL")**
***(On Behalf of Plaintiff and the California Subclass)***

171.     Plaintiff, individually and on behalf of the California Subclass, incorporates the above allegations as if fully set forth herein.

172.     Plaintiff pleads this claim for equitable relief, including restitution and injunctive relief, in the alternative to their claims for damages.

173.     The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

174.     Defendants' actions as alleged herein in this Class Action Complaint constitute an "unlawful" practice as encompassed by Cal. Bus. & Prof. Code §§ 17200 *et seq.* because Defendants' actions: (a) violated the California Consumer Records Act, Cal. Civ. Code §§ 1798.80 *et seq.*, (b) violated the CCPA, Cal. Civ. Code §§ 1798.100 *et seq.*, (c) constituted negligence; and (d) violated federal law and regulations, including the FTC Act and HIPAA.

175.     Defendants' actions as alleged in this Class Action Complaint also constitute an "unfair" practice as encompassed by Cal. Bus. & Prof. Code §§ 17200 *et seq.*, because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious. The harm caused by Defendants' wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to the California Subclass, including

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Plaintiff. There were ample reasonably available alternatives that would have furthered Defendants' legitimate business practices, including using industry-standard technologies to protect data (e.g., two-factor authorization, effective encryption and anonymization, compartmentalization of sensitive data, software patches, limiting how much data any user may access, and the purging of data no longer necessary for Defendants' services). Defendants also unreasonably delayed in notifying Plaintiff and the California Subclass Members regarding the unauthorized release and disclosure of their PII. Additionally, Defendants' conduct was "unfair" because it violated the legislatively declared policies reflected by California's strong data-breach and online-privacy laws, including the California Consumer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, the CCPA, Cal. Civ. Code §§ 1798.100, *et seq.*, and the California constitutional right to privacy, Cal. Const. Art. 1, § 1.

176.    Defendants' conduct also is deceptive in violation of the UCL. Defendants' fraudulent business acts and practices include:

a.  Failing to adequately secure the personal information of Plaintiff and California Subclass Members from disclosure to unauthorized third parties or for improper purposes;

b.  Enabling the disclosure of personal and sensitive facts about Plaintiff and California Subclass Members in a manner highly offensive to a reasonable person;

c.  Enabling the disclosure of personal and sensitive facts about Plaintiff and California Subclass Members without their informed, voluntary, affirmative, and clear consent;

d.  Omitting, suppressing, and concealing the material fact that Defendants did not reasonably or adequately secure Plaintiff's and California Subclass Members' personal information.

177.    Defendants' omissions were material because they were likely to deceive reasonable consumers about the adequacy of their data security and ability to protect the confidentiality of Plaintiff's and California Subclass Members' personal information.

178.    The harm from Defendants' conduct was not reasonably avoidable by consumers. Plaintiff and California Subclass Members were required to provide their PII to TransUnion to receive credit reporting services, which without their consent or knowledge, was in turn provided to Defendant Salesforce. Plaintiff and California Subclass Members did not know of, and had no

1    reasonable means of discovering, that their information would be exposed to hackers through

2    inadequate data security measures.

3         179.    There were reasonably available alternatives that would have furthered Defendants'

4    business interests of electronically transferring their customers' information while protecting PII.

5         180.    A reasonable person would regard Defendants' derelict data security and the Data

6    Breach as important, material facts that could and should have been disclosed.

7         181.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent

8    conduct, Plaintiff lost money or property because his sensitive personal information experienced a

9    diminution of value and because he devoted additional time to monitoring his financial accounts for

10   fraudulent activity. Plaintiff faces ongoing and impending damages related to theft of their PII.

11        182.    Defendants' wrongful practices constitute a continuing course of unfair competition

12   because, on information and belief, Defendants have failed to remedy the lax security practices or

13   even fully notify all affected California persons. Plaintiff and the California Subclass seek equitable

14   relief pursuant to Cal. Bus. & Prof. Code § 17203 to end Defendants' wrongful practices and require

15   Defendants to maintain adequate and reasonable security measures to protect the PII of Plaintiff and

16   the California Subclass.

17        183.    Plaintiff and California Subclass Members lack an adequate remedy at law because

18   the injuries here include an imminent risk of identity theft and fraud that can never be fully remedied

19   through damages, ongoing identity theft and fraud, as well as long term incalculable risk associated

20   with medical fraud.

21        184.    Further, if an injunction is not issued, Plaintiff and California Subclass Members will

22   suffer irreparable injury. The risk of another such breach is real, immediate, and substantial.

23   Defendants have still not provided adequate information on the cause and scope of the Data Breach.

24   Plaintiff and California Subclass Members lack an adequate remedy at law that will reasonably protect

25   against the risk of a further breach.

26        185.    Plaintiff and the California Subclass also seek an order requiring Defendants to make

27   full restitution of all monies they received through their wrongful conduct, along with all other relief

28   permitted under Cal. Bus. & Prof. Code §§ 17200 *et seq.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class set forth herein, respectfully requests the following relief:

A.  Certifying this action as a class action under Fed. R. Civ. P. 23 and appointing Plaintiff and his counsel to represent the Class;

B.  Entering judgment for Plaintiff and the Class;

C.  Granting permanent and appropriate injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein and directing Defendants to adequately safeguard the PII of Plaintiff and the Class by implementing improved security controls;

D.  Awarding compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

E.  Award Plaintiff and Class Members statutory or punitive damages as allowed by law in an amount to be determined at trial;

F.  Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of Defendants' unlawful acts, omissions, and practices;

G.  Awarding to Plaintiff and Class Members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

H.  Awarding pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper; and

I.  Granting such further and other relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims so triable.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1 | Dated: September 18, 2025

**SCHUBERT JONCKHEER & KOLBE LLP**

*/s/ Amber L. Schubert*
Amber L. Schubert

Robert C. Schubert (S.B.N. 62684)
Amber L. Schubert (S.B.N. 278696)
Sonum Dixit (S.B.N. 353395)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:    (415) 788-4220
Facsimile:    (415) 788-0161
E-mail:    rschubert@sjk.law
              aschubert@sjk.law
              sdixit@sjk.law

Melissa R. Emert (*pro hac vice forthcoming*)
Gary S. Graifman (*pro hac vice forthcoming*)
**KANTROWITZ, GOLDHAMER & GRAIFMAN,
P.C.**
135 Chestnut Ridge Road
Suite 200
Montvale, NJ 07645
Telephone: (201) 391-7000
E-mail: memert@kgglaw.com
            ggraifman@kgglaw.com

*Counsel for Plaintiff Richard Ealy and the Putative
Class*